**UNITED STATES BANKRUPTCY COURT**
DISTRICT OF NEW JERSEY
M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

VINCENT F. PAPALIA                                                                    (973) 368-1244
    BANKRUPTCY JUDGE

**NOT FOR PUBLICATION**

September 25, 2015

```
FILED
JAMES J. WALDRON, CLERK
SEPT. 25, 2015
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: s/ Ronnie Plasner
    JUDICIAL ASSISTANT
```

James P. D'Alessandro, Esq.
Muscarella, Bochet, Edwards & D'Alessandro
10-04 River Road
Fair Lawn, New Jersey 07410

Jeffrey W. Herrmann, Esq.
Cohn Lifland Pearlman Herrmann & Knopf LLP
250 Pehle Ave., Suite 401
Saddle Brook, New Jersey 07663

Re:    **In re Cederbaum (No. 12-40081-VFP)**
       **Edwards v. Hecht et al.**
       **Adversary Proceeding (No. 13-01203-VFP)**

Dear Counsel:

    Before the Court is the motion (the "Motion") of defendant Adi Hecht (the "Defendant") for summary judgment against plaintiff Barbara Edwards, chapter 7 trustee (the "Trustee") for the bankruptcy estate of Joshua C. Cederbaum (the "Debtor"). The Motion seeks dismissal of the Trustee's adversary complaint (the "Complaint") to sell real property jointly owned by the Defendant and the Debtor located at 32 Fairview Avenue, West Orange, New Jersey (the

"Property"), pursuant to § 363(h) of the Bankruptcy Code.  Because the Trustee has failed to show that a sale of the Property would result in a benefit to the Debtor's bankruptcy estate, the Court will grant the Motion.

The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 as amended September 18, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(N).  Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).  The following constitutes the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

I.      **Factual Background and Procedural History**

On March 14, 2011, the Debtor and the Defendant purchased the Property for $460,000. (Stip. of Facts at ¶ 1, ECF No. 31).  The parties were engaged to be married and planned to use the Property as their marital residence. (Cert. of Adi Hecht in Supp. of Mot. for Summ. J. at ¶ 4, ECF No. 24-2).  Ms. Hecht certified that she intended to purchase the Property with the Debtor as an equal owner and fund the full down payment and closing/settlement costs as a gift, conditioned on their upcoming marriage.  (*Id.* at ¶¶ 8-10).  The Debtor contends that he contributed $20,000 towards the down payment and closing costs.  (Debtor's Cert. in Opp'n to Def.'s Stmt. of Undisputed Material Facts at ¶¶ 8, 10, ECF No. 25-2).  After living together at the Property from March 2011 until May 2012, the engagement ended and the Debtor moved out. (Stip. of Facts at ¶ 3).  The Defendant has continued to reside at the Property through the present day.  (*Id.* at ¶ 7).

Page 3
September 25, 2015

On December 31, 2012, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. (*Id.* at ¶ 6). The Trustee filed the instant Complaint seeking to sell the interests of the Debtor and the Defendant in the Property pursuant to 11 U.S.C. § 363(h) on February 13, 2013. (*Id.* at ¶ 5). On June 3, 2014, the Defendant moved for summary judgment dismissing the Complaint in its entirety. (Def.'s Mot. for Summ. J., ECF No. 24). The Trustee opposed the Motion, and, following a hearing, the Court reserved decision.[1]

Following the hearing, the parties stipulated to the following facts for the purposes of the summary judgment Motion:[2]

- The fair market value of the Property is $470,000. (Stip. of Facts at ¶ 7).

- The costs associated with a sale of the Property would be 9%, or approximately $42,300. (*Id.* at ¶ 8).

- As of December 31, 2013, the principal balance remaining on the mortgage on the Property was $306,229. (*Id.* at ¶ 10).[3]

- A sale of the Property would result in proceeds of approximately $121,471 to be divided between the Defendant and the Debtor's bankruptcy estate.[4] (*Id.* at ¶ 11).

- To purchase the Property, the Defendant and the Debtor paid $152,948 towards a down payment and closing costs. Of this amount, the Defendant contributed $132,948 and the Debtor contributed $20,000. (*Id.* at ¶¶ 12-14).

- During the 14-month period in which the Debtor and the Defendant lived together at the Property, carrying costs associated with the Property (i.e., mortgage payments, taxes, insurance, utilities and other maintenance

---

[1] After the bankruptcy judge who initially heard the motion retired, this case was assigned to the undersigned.
[2] At the Court's request, the parties submitted a Stipulation of Facts for Purposes of Defendant Adi Hecht's Summary Judgment Motion (ECF No. 31), which is referred to here as the "Stip. of Facts." The parties reserved their rights to challenge certain facts if this Motion is decided against the Defendant.
[3] The Debtor's petition lists Hudson City Savings Bank as having a mortgage of $311,094.00 against the Property. (*See* Main Case, No. 12-40081-TBA, ECF No. 1).
[4] This figure is based on the presumptive purchase price of the Property ($470,000) less costs of sale ($42,300) and the payoff of the mortgage ($306,229).

- expenses) were approximately $3,834 per month.[5] (*Id.* at ¶ 16). Thus, the parties paid a total of $53,676 in carrying costs during this period. (*Id.*).

- Pursuant to 11 U.S.C. § 522(d)(1), the Debtor is entitled to a homestead exemption in the amount of $19,075. (*Id.* at ¶ 15).

The Defendant argues that summary judgment is warranted because her contribution to the purchase price, combined with credits she is entitled to based on payment of more than her pro-rata share of carrying costs, means that the estate would have no interest in the proceeds of a sale of the Property.

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[6] At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek,* 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247-48 (emphasis in original). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the moving party." *Anderson,* 477 U.S. at 249.

---

[5] The monthly carrying costs included: mortgage and tax expenses of $3,062, insurance expenses of $244, utility expenses of $400, and landscaping payments of $128. (Stip. of Facts at ¶ 16).

[6] Federal Rule of Civil Procedure 56(c) is made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056.

In determining whether a genuine issue of material fact exists, the court must construe all facts and inferences in a light most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne,* 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986)). Summary judgment is appropriate where the non-moving party fails to "make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial." *Cardenas v. Massey,* 269 F.3d 251, 254-55 (3d Cir. 2001) (quoting *Celotex Corp v. Catrett,* 477 U.S. 317, 322 (1986).

### III.     11 U.S.C. § 363(h)

Section 363(h) provides:

> the trustee may sell both the estate's interest . . . and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
>
> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h). The trustee has the burden of proving each of the four elements of § 363(h). *In re McCoy*, 92 B.R. 750, 751 (Bankr. N.D. Ohio 1988). Whether a sale of a co-owner's

interest in property pursuant to § 363(h) should be authorized is an equitable judgment that lies within the discretion of the bankruptcy court. *See In re Probasco*, 839 F.2d 1352, 1357 (9th Cir. 1988); *In re Sturman,* 222 B.R. 694, 709 (Bankr. S.D.N.Y. 1998). In determining whether the benefit to the estate outweighs the detriment to a co-owner, courts consider both economic and non-economic factors. *In re Persky,* 893 F.3d 15, 20 (2d Cir. 1989).

For the purposes of the Motion, the Defendant does not dispute that the first, second, and fourth elements of § 363(h) are present. (*See* Def.'s Trial Mem. at 2, ECF No. 23). However, the Defendant asserts that a sale of the Property would not satisfy § 363(h)(3) because the estate has no interest in the Property based on the parties' relative contributions to the purchase price and carrying costs of maintaining the Property. In this regard, the first part of the analysis under § 363(h)(3) requires the Trustee to establish that a sale of the Property would benefit the estate, (i.e., the estate's interest in and share of the proceeds must exceed the liens on the debtor's interest in the property). *In re DeVanzo*, No. 8-08-75665, Adv. No. 8-09-08128, 2010 WL 1780038 at *4 (Bankr. E.D.N.Y. May 3, 2010) (citing *Gray v. Burke (In re Coletta Bros.)*, 172 B.R. 159, 165 (Bankr. D. Mass. 1994).

For the purposes of the § 363(h) analysis, interests in co-owned assets are determined as of the date of the petition. *In re Vassilowitch*, 72 B.R. 803, 805 (Bankr. D. Mass. 1987); *In re Maruko*, 200 B.R. 876, 882 (Bankr. S.D. Cal. 1996). The interests of a debtor's bankruptcy estate in those assets are determined according to state law. *In re Brannon*, 476 F.3d 170, 176 (3d Cir. 2007) ("[C]ourts turn to state law for the 'determination of property rights in the assets of a bankrupt's estate.'"); *Butner v. United States,* 440 U.S. 48 (1979).

Under New Jersey law, where two parties intending to marry take title to real property and the engagement is subsequently broken off, each party's ownership share is equitably fixed

in proportion to his or her contribution to the purchase price. *See Aronow v. Silver*, 223 N.J. Super. 344, 350 (Ch. Div. 1987); *Asante v. Abban*, 237 N.J. Super. 495, 501 (Law Div. 1989) (holding that where engaged couple took title to property but broke off engagement before marriage, each party "has a share in ownership in proportion to [his or her] financial contribution toward the purchase price.").

Furthermore, a co-owner who pays more than her pro-rata share of carrying costs associated with common property is entitled to a credit from other co-owners for any such expenses. *See Reitmeier v. Kalinoski*, 631 F. Supp. 565, 581-82 (D.N.J. 1986) ("New Jersey courts normally allow co-tenants in possession a contribution from their fellow co-tenants for mortgage payments, taxes, necessary repairs, maintenance, carrying charges, and insurance."); *Esteves v. Esteves*, 341 N.J. Super. 197, 201 (App. Div. 2001) ("[O]n a sale of commonly owned property, an owner who has paid less than his pro-rata share of operating and maintenance expenses of the property, must account to a co-owner who has contributed more than his pro-rata share, and that is true even if the former had been out of possession and the latter in possession of the property.").[7]

Here, for the purposes of this Motion, the parties stipulated that of the $152,948 paid to purchase the Property, the Defendant contributed $132,948 and the Debtor contributed $20,000. (Stip. of Facts at ¶¶ 12-14). Applying New Jersey law, the parties' respective contributions mean that the Defendant's ownership share of the Property is approximately 86.9% and the Debtor's ownership share is approximately 13.1%.

The parties further stipulated that, after deducting costs of sale ($42,300) and the payoff of the mortgage ($306,229), a sale of the Property would result in net proceeds of approximately

---

[7] The Trustee has not challenged these points of New Jersey law.

$121,471. (*Id.* at ¶ 11). The Defendant's 86.9% equitable interest in the Property means that she would be entitled to receive $105,558.30 of the sale proceeds, while the Debtor's 13.1% equitable interest means that the bankruptcy estate's share (prior to considering exemptions) would be $15,912.70.

However, as noted above, because New Jersey law further provides that a co-tenant who pays more than her pro-rata share of carrying costs is entitled to a credit for any such expenses from other co-tenants, the parties' interests in the proceeds of sale must take into account their contributions to carrying costs during the period in which they lived at the Property together.[8] The parties stipulated that total carrying costs (including mortgage, utility, and maintenance expenses) during the 14-month cohabitation period were $53,676. (*Id.* at ¶ 16). Accordingly, each party's pro-rata share of carrying costs during this period is $26,838. While the parties stipulated that Ms. Hecht has paid all carrying costs since the Debtor moved out, the Debtor asserts that he contributed $8,650 to expenses in November 2011 and paid all utility bills ($400 per month) over the cohabitation period. (Debtor's Cert. in Opp'n to Def.'s Stmt. of Undisputed Material Facts at ¶ 8, ECF No. 25).[9]

---

[8] The Defendant asserts she is entitled to credits for carrying costs paid after the Debtor vacated the Property and since the filing of the petition. However, any right to such credits would need to be offset (at least in part) by the Defendant's exclusive use and occupancy of the Property. *See Sabatini v. Sabatini*, No. A-2873-06T3, 2008 WL 706500 at *3 (N.J. Super. Ct. App. Div. Mar. 18, 2008) ("[W]hen the tenant in common who has been in possession seeks credit for his contribution toward the operation and maintenance expenses from the other tenant, in fairness and equity, he must provide a credit for the value of his use and occupancy of the premises to the other"); *Asante*, 237 N.J. Super. at 502. Nonetheless, any potential entitlement to additional credits is irrelevant to this Motion because the estate's interest in the Property does not warrant a sale under § 363(h) even if the Debtor does not owe the Defendant any additional credits. Thus, the Court is not considering carrying costs paid after the Debtor vacated the Property as they not relevant or necessary to this decision and, in any event, would only increase the credits to which Ms. Hecht is entitled.

[9] While the Debtor submitted a $8,500 check to support this contention, he did not provide documentary evidence to support his claim regarding payment of utility bills. (Debtor's Cert. in Opp'n at ¶ 8, ECF No. 25-2). Because the Court must draw all inferences in favor of the non-moving party, the Court will assume the Debtor paid these bills for the purposes of this Motion. However, Ms. Hecht reserved her right to dispute that the Debtor paid the utility bills and contributed the $8,650 to the Property's carrying costs if this Motion is not decided in her favor.

Drawing all favorable inferences in favor of the Debtor, this means that the Debtor contributed, at most, $14,250 ($8,650 plus $400 for 14 months) to carrying costs while the Defendant paid the remaining $39,426. Thus, the Defendant is entitled to a credit from the Debtor in the amount of $12,588, the difference between her pro-rata share and the amount she actually paid ($39,426 - $26,838 = $12,588). Deducting the $12,588 credit from the $15,912.70 that the estate would receive based on the Debtor's contribution to the purchase price reduces the estate's interest in the proceeds of sale to $3,324.70.

It is clear that neither the $3,324.70 in "net" proceeds after carrying costs, nor the $15,912.70 available based on the parties' initial contributions to the Property without considering carrying costs, is a sufficient benefit to the estate to warrant a § 363(h) sale of common property, especially once the Debtor's $19,075 claimed exemption is considered. *See In re Spickelmire*, 433 B.R. 792, 804-05 (Bankr. D. Idaho 2010) ("[I]f the trustee would receive little or no money from a sale due to liens or other encumbrances on the property, then the minimal benefit to the estate may be outweighed by the detriment to the co-owners.") (quoting *In re Ziegler,* 396 B.R. 1, 4 (Bankr. N.D. Ohio 2008); *Matter of Ray,* 73 B.R. 544, 549 (Bankr. M.D. Ga. 1987) (denying motion to sell pursuant to § 363(h) where "the sale price for the land might be sufficient to satisfy the liens, but there would not be a substantial recovery for [the debtor's] creditors"). This is true without even considering the non-economic detriment that would inevitably result from a forced sale of the Property over Ms. Hecht's objection. As noted, the parties agree that the Debtor is entitled to a homestead exemption in the amount of $19,075. Thus, even if the Court authorized a sale, the Debtor's exemption exceeds the estate's interest in the proceeds and no funds would be available for distribution to creditors.

In sum, because a sale of the Property would not create any value or benefit to the estate, the Court need not further weigh whether the benefit to the estate outweighs the detriment to the Defendant. Summary judgment in favor of the Defendant is appropriate because the undisputed facts reveal that the Trustee cannot meet her burden of showing that each element of § 363(h) (particularly 363(h)(3)) is present.

## IV.    Conclusion

The Defendant's Motion for summary judgment is granted and the Trustee's Complaint is dismissed with prejudice. An order in conformance with this Opinion will be entered.

Very truly yours,

*s/* *Vincent F. Papalia*

VINCENT F. PAPALIA
UNITED STATES BANKRUPTCY JUDGE